No. 92-158

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

CITY OF BILLINGS,
a Montana municipal corporation,
    Plaintiff, Counterdefendant and Respondent,

-v-

JEAN HUNT; HELEN KELLER; MAX H. HEFFNER; ELEANOR
M. HEFFNER; C.M. HEFFNER, JR.; AMELIA O. HEFFNER;
INTERNAL REVENUE SERVICE; UNITED STATES OF AMERICA
and DEPARTMENT OF REVENUE STATE OF MONTANA,
    Defendants,

DENNIS J. RUE CO., INC., a/k/a DENNIS J. RUE, INC.;
ANGIE JUROVICH, THOMAS L. FERGUSON, TRUSTEE; GARY
KAINU; PATRICIA I. KAINU; EDWARD S. MARTYR, a/k/a
E.S. MARTYR; BETTY MARTYR; ABBY FERGUSON, TRUSTEE;
DONALD L. FERGUSON; THOMAS L. FERGUSON; JOHN EDWARD
FERGUSON; KELLIE ANN FERGUSON; MYRNA A. CLARK; THE
ABBY FERGUSON TRUST; THE ABBY FERGUSON IRREVOCABLE
TRUST; UNIVEST, INC.; and ROBERT P. LIVENGOOD,
    Defendants, Counterclaimants and Appellants.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
              In and for the County of Yellowstone,
              The Honorable G. Todd Baugh, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        Mark D. Parker, Parker Law Firm, Billings, Montana

        For Respondent:

        Kenneth D. Peterson, Peterson & Schofield, Billings,
        Montana

Submitted:  December 15, 1992

Decided:  February 25, 1993

FILED

FEB 25 1993

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from an order of the Thirteenth Judicial District Court, Yellowstone County, refusing to award interest to appellants under § 70-30-302(2), MCA, pursuant to a condemnation proceeding taking vacant, undeveloped land. We reverse.

Appellants present the following issues for review:

1. Did the District Court err in refusing to award interest under § 70-30-302, MCA, when the City of Billings condemned vacant, undeveloped land?

2. Did the District Court err in awarding out-of-state witness travel expenses?

The appellants are the contract purchasers of real property legally described as Certificate of Survey 1805 consisting of 12.216 acres in Yellowstone County, Montana. The subject land is located on the "rims" south of Highway 318 at the southeast end of Logan International Airport in Billings, Montana. The parties stipulated that the highest and best use of the land was for professional offices.

In 1986, the City of Billings (City) offered to purchase all 12.216 acres of Certificate of Survey 1805 for $293,200. The landowners rejected the City's offer. On September 17, 1987, the City began condemnation proceedings under its power of eminent domain and served summonses on defendants in September 1987.

On February 29, 1988, the City moved for a preliminary condemnation order which was subsequently issued by the District

Court on May 4, 1988. In August 1989, after a Condemnation Commissioner's Hearing as required by § 70-30-301, MCA, the Condemnation Commissioners reported that the current fair market value of the property was $320,500. After a trial in February 1992 on the issue of fair market value, a jury found that the fair market value as of September 21, 1987 was $200,000.

The jury's award did not include interest prior to the judgment date. Although appellants had requested a jury instruction which would have included interest from the date of summons as part of the condemnation award, the verdict form used at the trial did not include interest and the District Court did not instruct the jury to include interest. Appellants seasonably objected to the jury instruction, thereby preserving that question for appeal.

I.

Did the District Court err in refusing to award interest under § 70-30-302(2), MCA, when the City of Billings condemned vacant, undeveloped land?

The Fifth Amendment to the United States Constitution prohibits governmental entities from taking private property for public use under the power of eminent domain without paying "just compensation." Similarly, Article II, Section 29 of the Montana Constitution prohibits the taking or damaging of private property for public use "without just compensation to the full extent of the loss having been first made to or paid into court for the owner."

3

"Just compensation" may include interest. Interest has been regarded as a substitute for computing appreciation of land value between the time of taking and the date of payment. See United States v. 156.81 Acres of Land (9th Cir. 1982), 671 F.2d 336, 339, cert. denied, 459 U.S. 1086, 103 S.Ct. 569, 74 L.Ed.2d 931 (1982). Section 70-30-302, MCA, provides:

> **Assessing compensation -- date and measure -- interest.** (1) For the purpose of assessing compensation, the right thereto shall be deemed to have accrued at the date of the service of the summons, and its current fair market value as of that date shall be the measure of compensation for all property to be actually taken and the basis of depreciation in the current fair market value of property not actually taken but injuriously affected. . . .
>
> (2) If an order be made letting the plaintiff into possession, as provided in 70-30-311, the full amount finally awarded shall draw interest at the rate of 10% per annum from the date of the service of the summons to the earlier of the following dates:
> (a) the date on which the right to appeal to the Montana supreme court expires or, if appeal is filed, to the date of final decision by the supreme court; or
> (b) the date on which the property owner withdraws from court the full amount finally awarded.
>
> . . .
>
> (5) No improvements put upon the property subsequent to the date of the service of summons shall be included in the assessment of compensation or depreciation in current fair market value, nor shall the same be used as the basis of computing such compensation or depreciation.

Under § 70-30-302(2), MCA, if the City had been let into possession of the property, interest would have been awarded from the date of service of summons. Here, the District Court's Judgment putting the City in possession was dated March 10, 1992. The appellants received no interest from the date of summons in

4

September 1987 to March 10, 1992.

The subject land is vacant and unimproved with its primary value prior to condemnation as investment property. Appellants' plan to develop the land for professional office buildings was foreclosed in September 1987 when they were served with summonses in this proceeding. Although appellants could have improved the land, § 70-30-302(5), MCA, would have prevented them from receiving compensation for any improvements to the land after the date of summons. While § 70-30-302, MCA, does deprive the owner of compensation for improvements added to the land, the land can still be used for other purposes such as growing of crops, recreation, or parking, should that be the source of income.

It is the general rule that a taking does not occur until: (1) legal title vests in the condemnor, (2) the condemnor enters into actual possession, or (3) the condemnor takes constructive possession either by causing damage to property or by depriving the owner of full beneficial use of his land. Stewart & Grindle, Inc. v. State (Alaska 1974), 524 P.2d 1242. The Alaska court noted in that case that Alaska's statutory scheme deprived the owner of both investment potential and the possibility of future development the moment a condemnation action commences. Stewart & Grindle, Inc., 524 P.2d at 1247. Section 70-30-302, MCA, essentially identical to the Alaska statute, does the same thing.

The owner, however, remains responsible for expenses incidental to legal ownership. State v. Nordstrom (N.J. 1969), 253

5

A.2d 163. This includes mortgage payments, tort liability and the like. For example, § 70-30-314, MCA, specifically postpones the condemnor's responsibility for noxious weed control. In Montana, not all incidents of ownership remain with the owner; property taxes become the responsibility of the condemnor. Section 70-30-315, MCA. In Stewart & Grindle, Inc., 524 P.2d at 1247, the Alaska court reasoned:

> . . . If as a matter of constitutional law the property owner is entitled to interest from the moment the State takes legal possession, he should, *a fortiori*, receive interest where he has been deprived of all the economic advantages of legal ownership but is relieved of none of the liabilities.

In Nordstrom, a case which allowed interest from the date the proceeding began, the court declined to set forth a firm rule and stated its desire to proceed on a case-by-case basis when dealing with unimproved property. Nordstrom, 253 A.2d at 165. The Alaska court rejected this approach because it could not conceive of an instance in which owners of unimproved property would not be entitled to interest from the date of the suit (with appropriate set-offs for rents and profits). Stewart & Grindle, Inc., 524 P.2d at 1249, n.24.

We disagree with the Alaska court's assessment that interest should be paid from the date of service of summons in all cases where vacant and unimproved land is held for investment with a view toward ultimate development. Like the Nordstrom court, we conclude that it is advisable to proceed on a case-by-case basis in considering the awarding of interest on condemnations.

6

In Manke v. Airport Authority of Washoe County (Nev. 1985), 710 P.2d 80, the Nevada Supreme Court reversed a district court order refusing to award interest to owners of vacant and unimproved land located near an airport and held for investment. The Nevada statute, like those in Alaska and Montana, foreclosed development of the condemned property after the date of the service of summons. The facts in the case before us are strikingly similar to those in Manke, where the respondent's objective in condemning appellants' property was to create a clear zone surrounding the airport. Significantly, the court said

> Our holding that a taking occurred in this case on the date of the service of summons is buttressed by the fact that the burden placed upon appellants by the service of summons directly corresponds to a benefit conferred upon respondent. . . . Because development of appellant's property was frozen on the date of the service of summons, respondent's objective in condemning appellants' property was accomplished on that date. (Citations omitted)

Manke, 710 P.2d at 82.

The same is true here. Appellants' could not develop the property after the date of summons; the City of Billings achieved its objective on the date of summons. We agree with the reasoning in Manke and Nordstrom, which held that where owners of vacant and unimproved land are deprived of all economically viable use of their property, a taking occurs at the inception of the eminent domain proceedings. See also United States v. 156.81 Acres of Land 671 F.2d at 340 (condemnation order that denied the landowners any economically viable use of their land was a taking as of the date the condemnation began and interest was appropriate in such

7

circumstances).

In Nordstrom, the court stated that rents, profits and beneficial use are to be applied in abatement and that interest should not run on monies deposited with the court. Nordstrom, 253 A.2d at 167. We adopt the following statement from Nordstrom:

> The awarding of interest does not lend itself to rigid guidelines, but rather is best considered on a case-by-case basis in order to determine compensation which is "just." One of the critical variables in every case is the use to which the land is being put by the condemnees. There would be good cause to abate interest if the condemnees were left undisturbed in their enjoyment of the property by the condemnation proceeding, or if they continue to receive undiminished rents and profits from the use of the land up to the time the State takes possession. On the other hand, where the condemnation proceedings restrict the profitable use or enjoyment of the property, interest ordinarily should be allowed.

Nordstrom, 253 A.2d at 165-66.

Our standard of review for a district court's conclusions of law is whether they are correct. Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 803 P.2d 601. We conclude that the landowners in this case were deprived of all economically viable use of their vacant and unimproved property. As a result we conclude that the court erred in refusing to award interest.

We hold that the landowners in this case were deprived of all economically viable use of their vacant, unimproved property and that they are entitled to interest from the date of service of summons.

## II.

Did the District Court err in awarding out-of-state witness

8

travel expenses?

The District Court awarded $436.50 for travel costs for Verl Brady. Appellants contend that this amount was improperly awarded because the City did not request travel for Verl Brady outside the state of Montana and because the law provides that costs are not allowable for travel outside the state. Appellants rely on Chilcott v. Rea (1916), 52 Mont. 134, 155 P. 1114; and Bullard v. Zimmerman (1930), 88 Mont. 271, 292 P. 730. Both Chilcott and Bullard held that mileage costs for witnesses were limited to expenses for travel within the state of Montana. The statute providing for allowable costs has remained unchanged since the dates of those decisions, except for its heading. Section 25-10-201, MCA, provides in pertinent part:

> **Costs generally allowable.** A party to whom costs are awarded in an action is entitled to include in his bill of costs his necessary disbursements, as follows:
>
> (1) the legal fees of witnesses, including mileage, or referees and other officers . . .

As noted, Chilcott and Bullard allowed mileage expense to travel within the state of Montana. In referring to prior interpretations of § 25-10-201, MCA, the District Court concluded that § 26-2-501(b), MCA, allowed mileage past the state line. Section 26-2-501(b) provides in pertinent part:

> (b) for mileage in traveling to the place of trial or hearing, each way, for each mile, a mileage allowance as provided in 2-18-503.

Nothing in § 26-2-501(b) provides for recovery of mileage costs for travel outside the state of Montana. We conclude that

9

the District Court incorrectly applied the law in its calculation of costs.

We hold the District Court erred in awarding out-of-state witness travel expenses.

We reverse and remand the case to the District Court with instructions to modify its judgment of condemnation to include interest from the date of service of summonses and to reconsider its award of costs consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

February 25, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Mark D. Parker
Parker Law Firm
P.O. Box 7212
Billings, MT   59103-7212

Lorraine D. Gallinger
Assistant U.S. Attorney
P.O. Box 1478
Billings, MT   59103

Dale F. Galles, Esq.
Galles & Gunderson
P.O. Box 926
Billings, MT   59103

Bruce McGinnis, Legal Counsel
Dept. of Revenue
Mitchell Bldg.
Helena, MT   59620

Kenneth D. Peterson
Peterson & Schofield
2906 Third Ave. No.
Billings, MT   59101

Hon. Marc Racicot
Attorney General
Justice Bldg.
Helena, MT   59620

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA